## HOWE *vs.* REED.

Where the residence of an execution debtor was described in the execution as being in a town out of the County, the officer in making a levy, was held to be justified in considering that town as the place of his residence *at the time of the levy.* And no proof being offered showing that he lived within the County, the officer was not required to notify him to choose an appraiser.

Where it was attempted to impeach a conveyance on the ground of fraud, evidence that the grantor made other conveyances, about the same time, which were fraudulent, was held to be admissible to prove *his* fraudulent design in the case on trial. But it could not affect the *grantee,* unless followed up by evidence of his participation in some way, in the fraud.

THIS was a *writ of entry,* brought to recover possession of an undivided moiety of a certain lot of land in this county. The general issue was pleaded and joined. The demandant relied upon a title acquired under the levy of an execution, on the 25th of *April,* 1829, against *Samuel D. Reed* and *John Drummond,* in favor of *Hall J. Howe,* the demandant, and *James Howe,* the latter of whom had deceased prior to the commencement of this suit.

The validity of this levy was objected to by the defendant's counsel, because it did not appear by the officer's return upon the execution, that *Samuel D. Reed,* one of the debtors, was notified, and had an opportunity to choose an appraiser, it not appearing further, that the judgment debtor was not living in the county at the time of the levy.

The counsel for the plaintiff thereupon moved for leave to have the return amended by the officer, so as that it should conform to the truth of the case, by adding, that said *Reed,* the judgment debtor, was duly notified by a written notice left at his last and usual place of abode, in *Lincolnville. Emery,* the presiding Judge, denied the motion, but overruled the objection of the tenant, and instructed the jury, that inasmuch as *Reed,* the judgment debtor, was named in the execution as of *Phipsburg,* in the county of *Lincoln,* the return was sufficient.

The tenant then read a deed of the premises from *Samuel D. Reed* to himself, dated *January* 25, 1828. This, the plaintiff contended was fraudulent and void, and introduced evidence tending to support that allegation. *Samuel D. Reed,* having been

released from his covenants and introduced by the defendant as a witness, the plaintiff proposed to inquire of him, to prove the deed from himself to the defendant, fraudulent as to creditors, as to certain transactions between himself and one *Drummond*, acting under the firm of *Reed & Drummond*, and *Albert Reed*, a clerk in their store, in relation to the sale of their whole stock in trade to him, with a vessel and certain real estate, about the middle of *January*, 1828. To this inquiry, the defendant's counsel objected, inasmuch as the defendant was not a party in the transactions alluded to, and the Judge sustained the objection. Afterward, however, on the defendant's counsel asking the witness whether the defendant had any knowledge of these transactions between *Reed & Drummond* and *Albert Reed*, or was in any manner a party thereto, to which the witness responded in the negative, the Judge permitted the history of the transactions alluded to, to be gone into, the defendant's counsel having thus, by his inquiries, opened the door for that purpose. The deposition of *George Drinkwater*, in relation to the same matter, which had before been offered by the plaintiff, and rejected by the Judge, was also admitted after the inquiry aforesaid proposed by the defendant's counsel. His testimony corresponded with that of *Reed*, and tended to show the conveyances from the former to *Albert Reed*, to be made with a fraudulent intent. It was also proved, that *Reed & Drummond* failed in *January*, 1828.

The jury returned a verdict for the demandant, which was to stand or be set aside and a new trial granted, according as the opinion of the whole Court should be upon the correctness of the foregoing ruling of the presiding Judge.

*Preble*, and *W. G. Crosby*, insisted that it should appear by *the return* of the officer, that the debtor was notified, or that he was not resident in the County. The residence, as stated in the execution, is no evidence of where it was at the time of the levy. The clerk makes out the execution from the writ, and he is not to change the place, though the party actually moves. He is a mere ministerial officer and judges nothing. It is otherwise with the sheriff—he must judge as to who is the owner of property, where parties reside, &c. *Means v. Osgood*, 7 *Greenl.* 146; *Howard & al.* v. *Turner*, 6 *Greenl.* 106.

They also contended, that the testimony of *Samuel D. Read* and *Drinkwater*, was inadmissible, no knowledge of the transactions alluded to, having been brought home to the knowledge of the defendant; and cited *Bridge* v. *Eggleston*, 14 *Mass.* 245.

*Thayer*, for the demandant, contended that no notice to the execution debtor, under the circumstances proved, was necessary.

To show that the testimony of *S. D. Reed* and *Drinkwater*, was rightly admitted, he cited 6 *Stark. Ev.* 34, 148.

PARRIS J. — Inasmuch as the execution describes the debtor as living in *Phipsburg*, in the county of *Lincoln*, we think the officer was fully justified in considering that town as his place of residence at the time of the levy ; and as no proof was offered, showing that he lived within the county of *Waldo*, but the record showing that he did not, the .officer was not required to notify him to choose an appraiser.

If the testimony of *Samuel D. Reed*, was originally inadmissible, we do not perceive how it became admissible by reason of the questions put to him by the defendant. Those questions did not relate to the subject matter concerning which he was called to testify. If they did, then, as said by the plaintiff's counsel, the door would have been opened by the defendant, and the plaintiff might take advantage of it, if he pleased. But the defendant contended, that whatever transactions might have taken place between *Samuel D. Reed*, and *Albert Reed*, or any other stranger, they should not be given in evidence to prejudice the defence in this action, unless a knowledge of them was brought home to the defendant. To show that he was not chargeable with notice, the defendant made the inquiry, and the answer was in his favor. Surely that, of itself, could not relieve the plaintiff from any restrictions as to the examination of the witness, which existed previous to making this inquiry by the defendant ; much less could it have any influence upon the question of the admissibility of *Drinkwater's* deposition.

But we think the testimony of *Samuel D. Reed* and *Drinkwater*, admissible, notwithstanding the objections raised by the defendant's counsel. The conveyance from *Samuel D. Reed* to the defendant, which the plaintiff attempted to impeach, was on the 25th of *January*, 1828. It was proved that *Reed* and

*Drummond* failed as early as *January*, 1828. The testimony of *Drinkwater* related to a pretended sale of a large quantity of personal property, by *Samuel D. Reed* and *Drummond*, to *Albert Reed*, their clerk, about the middle of *January*, 1828, and the Judge, in his report of the case, says, that *Reed's* testimony was to the same points and facts as *Drinkwater's*.

To establish the fraudulent character of the conveyance of the real estate now in question, from *Samuel D. Reed* to the defendant, it was necessary for the plaintiff to prove, that the former conveyed for the purpose of defrauding his creditors, and that the latter received the conveyance with the knowledge of the grantor's fraudulent intent. Any evidence tending to show that the grantor made other fraudulent conveyances about the same time with the conveyance in question, would be admissible, as tending to shew his intention in making the latter conveyance. When that intention was proved to have been fraudulent, the plaintiff would have established one of the propositions necessary to make out his case. But he must go farther and show the grantee to have been a participator in the fraud ; and this he may do by a course of proof entirely distinct from that by which he fixed fraud upon the grantor. If he fail in the latter proposition, the first, however conclusively established, will avail him nothing. This is the spirit of the decision in *Bridge* v. *Eggleston*, relied upon by the defendant's counsel, and it is precisely the case of *Foster* v. *Hall*, 12 *Pick*. 89. That was a question of fraudulent conveyance of real estate, impeached by the defendant, who, at the trial, proposed to prove that other fraudulent conveyances were made by the plaintiff's grantor, at or about the same time, with the conveyance in question. It was ruled, that unless some evidence was offered to show that the plaintiff knew of these particular conveyances, or of a general purpose of the grantor to convey away his property to the injury of his creditors, the evidence of other conveyances was not admissible.

But the whole Court held, that this ruling was incorrect ; that the limitation under which the defendant was allowed to go into evidence of other fraudulent conveyances made at the same time, or previous to the conveyance to the plaintiff as evidence of the fraudulent intent, and design of the grantor, ought not to have

been imposed, but that the defendant ought to have been allowed to show, if he could, by the acts as well as the declarations of the grantor, prior to the conveyance in question, that he had a fraudulent design, without requiring proof of knowledge on the part of the plaintiff, of the particular acts of the grantor, from which such intent, on his part was to be inferred.

Considering that in the case at bar, the plaintiff had a right to avail himself directly of the testimony of *Samuel D. Reed* and *Drinkwater*, we perceive no reason for setting aside the verdict on account of any irregularity in the circuitous manner by which he came to the enjoyment of that right.